Chief Justice Marshall
delivered the opinioirof the Court.
This petition was filed by Thomas Jett, executor of Nelson Graves, deceased, to obtain a construction of the will of his testator, and a determination of the rights growing out of it as they might effect his own action in the management of the estate, and in fulfillment of the trust confided to him. The will, which was admitted to record in August, 1853, first directs Thomas Jett, whom it appoints executor, to sell all the real and personal estate oí the testator except the slaves, as soon as possible, on a credit of one and two years, and at public or private sale as he may deem proper. The second clause gives $1,000 to the Kentucky State Colonization Society. The third gives $500 to the executor. The fourth directs that when the above property is sold, and the proceeds collected, the executor shall pay one half of it to certain relatives of the testator. The fifth says: “The other half is to be paid over to my slaves, each and every one of them to have an equal share.” The sixth clause is as follows: “Each and every one of my slaves are to be liberated and placed in the hands of the Kentucky State Colonization Society for the purpose of being colonized to Liberia.” The seventh merely appoints the executor to carry the will into effect.
The petition makes defendants the testator’s relatives wrho are legatees, and also the slaves therein referred to, and also the Kentucky State Colonization Society, and all seem to have been actually or constructively summoned. Many of the slaves appear to be infants, for whom the usual answer was filed by their guardian ad litem. The adult slaves gener *367 ally claim in their answers, that by the will their freedom is immediate and absolute, and their right to equal shares in one half of the proceeds of the estate as soon as realized, dependent upon no condition; that they are not bound to go to Liberia, but under the laws of the state are bound only to remove from it, to become entitled to the full enjoyment of their freedom and of the legacies bequeathed to them, and that they are severally entitled to the proceeds of their respective labor or hires since the testator’s death; and they object to the appropriation of any part of these hires to the benefit of any but those who have respectively earned them, or to the expense of transporting them to Liberia.
1. The will contained this clause: “Each and every one of my slaves are to be liberated and placed in the hands of the Kentucky State Colonization Society, for the purpose of being colon-zed to Liberia: Held that in the foregoing clause there are no words of immediate emancipation, but the slaves are to be placed in the hands of the society for the pur pose of being colonized to (in) Liberia. The liberation and indicated disposition is lor the single purpose of being coloni zed, ana so connected with it as to be incapable of a separate and independent operation without violating the intention of the testator. Their coloniza tiou, as tar as it dependsuponthe slaves, ia a condition precedent to their emancipation.
*367 It is upon these, and some other points that the executor states his difficulties, and asks the decision of the court; and by the decree rendered the most important of the questions are decided. Without stating in detail the several principles or directions of the decree, we proceed on our own conclusions with respect to the matters decided, the case having been continued in the circuit court as to the matters not specifically decided.
1. Upon the emancipating clause in the will, we are of opinion that as there are no words of immedidiate emancipation, but the language is that the' slaves are to be liberated and placed in the hands of the Kentucky State Colonization Society for the purpose^ being colonized to (in) Liberia, the liberation and indicated disposition of the slaves being avowedly for the same and single purpose of their being colonized in Liberia, are alike subordinate to the purpose. There is but one intention in the entire will, and that is that the slaves shall be liberated and handed over for the purpose expressed. If the avowed purpose for which alone they are intended to be liberated cannot be, or is not accomplished, there is no evidence of an intention to liberate. It is true the words, each and every one of my slaves are to be liberated, would, if standing alone and unqualified, *368 be deemed sufficient to indicate and effect an immediate emancipation, but they would be so deemed for the very reason that there would be nothing to postpone, or in any manner to qualify the clearly expressed intention that the slaves should have their freedom, and therefore they would, as in other cases, be entitled to the immediate benefit of the gifts as soon as by the testator’s death the will should become effectual. Inthiscaset.be intended emancipation of the slaves is prospective, and so connected with the purpose of their being colonized, as to he incapable of a separate and independent operation without violating the manifest intention of the testator. The colonization, as far as it depends upon any act of the slave, is a condition precedent to the emancipation, and as the law withholds the full enjoyment of freedom from an emancipated slave until his removal from the state, the will makes the removal for the purpose of being colonized the condition of freedom, and appoints the delivery to the society as the means of effecting that purpose.
2. A bequest to slavea, each of an equal share in one half the proceeds of the testator’s estate, being illegal, can only he made effectual on their becoming free, and capable of taking as legatees, and none are entitled to freedom or to the bequest b ade to them who are not colonized.
2. The bequest of money to the slaves, as slaves, being illegal and void, it must, as the only means of making it effectual, be construed as a gift in future, to take effect when the slaves become free- and capable of being legatees, and as being therefore wholly dependent upon their becoming so. Since then this bequest must have the same effect as if it read, “The other half (of the proceeds of sale) is to be paid over to my slaves when they become free according- to this will, each and every one of them to have an equal shave,” and as there is no other gift but in this direction to pay, it follow's that the right to the legacy depends upon the same condition as the right to freedom, that none are entitled to the legacy who refuse or fail to do their part in the performance of the condition by conclusively submitting themselves to be transported to Liberia for the purpose of being there colonized, and that it is only to those who thus secure their freedom as designed by the will, *369 that the legacy is to he paid to each an equal share. As the legacy did not vest in any of the slaves upon the death of the testator, and cannot vest in any until the condition, as far as it depends upon them, is performed, the effect of the previous death of any, or of the conclusive failure or refusal of any to perform the condition, is to diminish the number of those among whom the legacy is to be distributed. The willingness of any of the slaves to remove from this state to any other country or place than Liberia, or the actual emigration of any of them from Kentucky to any other state or place, is no compliance with the requisition or purpose of the will, and does not give freedom under its provisions.
3. The will, making no provision for the expense of trans portation of the slaves to Liberia, or requiring that it shall be at the expense of the colonization society, if there be no other fund, a portion of the legacy is to be appropriated to that purpose, in consistency with the will and the Rev. Stat., page 644'.
3. The will does not expressly create or appropriate a fund for the removal of the slaves to Liberia, but it certainly intends that they shall be taken there, and as the testator does not make their removal by the Colonization Society a condition of the legacy to it, nor otherwise attempt to charge it with this burthen, which it cannot be compelled to perform or undertake gratuitously, we are of opinion that if there be no other means properly applicable to this object, and as far as other means may be deficient, the legacies given to the persons themselves, who for their own supposed benefit are required to go or to be taken to Liberia, may and should, under the direction of the chancellor, be appropriated to that purpose. But there is another fund, viz., that arising and which may have arisen from the hires of the slaves before tbeir departure for Liberia, which is primarily liable to be appropriated for bearing the expense of their removal. If these slaves had been immediately emancipated by will, and their removal to Liberia had been directed without any provision for the necessary expense, they would, under the provisions of the Revised Statutes on the subject, (R. S. page, 644, SfC.,) have been hired out under the direction of the county court, to raise a fund for defraying the expense of removal, and for their maintenance *370 for twelve months afterwards, the proceeds of the la* bor of each family being united in a common fund for its benefit. As the slaves in this case were not immediately emancipated by the will, they were not directly subject to this provision, but came under the authority of the executor for the purposes of the will, one of which, and a very important one, was that they should be removed to Liberia. It was his duty to hire or to employ them prudently, and with a view to their comfort. And as there is no intimation in the will, nor any presumption from its general tenor, or from the circumstances of the estate, which was large and unembarrassed, that their earnings should be appropriated otherwise than for their own benefit, we think it is entirely consistent with the will, and may without vielence be inferred from it, that they should constitute a fund for defraying the expense of removal, which the example of the statute indicates as their proper object.
4. The right to freedom on the part of the slaves being p ro s p ec tive, their hire, until their freedom is complete, is a part of the estate, and properly a fund for distribution, as the balance -of the estate, and may properly be applied to defray the expenses of transpo rtation equally for the benefit of all; and the remaining parts paid to each adult on arriving in Liberia, or on their embarcation, & the parts of the infants so secured to them in Liberia that they receive it on arriving at full age.
But the question arises how far these earnings from the labor of different individuals shall constitute a common fund to be appropriated to the general expense of removal. If each of these individuals was free, each would be entitled to his own earnings without the participation of others, except so far as the obligations of kindred and family might require. But they are not actually free. They have only the prospective right to freedom upon a prescribed condition, until the happening of which they are not the masters of their own labor, nor the proprietors of its earnings. These go to the execntor for the purposes of the will, and he takes them not as the property of the several slaves, but rather as property of the estate which may, and by implication should be appropriated towards the discharge of the burthen of removal, which so far as it is thus borne is borne by a fund in which none of these individuals bas a specific right or interest distinct from that of others. The will evidently intends that all the slaves shall be colonized in Liberia, and it contemplates, though it may *371 not require that they shall all go at once or in a body. We think it also intends that they shall participate equally in every benefit which it confers, and especially that each shall have an equal capital to be used for sustenance or profit in that distant and strange region to which they are to be consigned.— But this equality, intended to take effect at the moment of liberation, would be frustrated and broken up, if the previous earnings of each were to be appropriated to his or her separate use in defraying the expense of preparation or transportation, and if the share of each in the legacy were to be charged with so much as his or her earnings should fall short of paying this expense. If this were so, it would necessarily occur, and as we think contrary to the probable intention of the testator, that those who from infancy or age, or the incumbrance of children, were the least capable of profitable labor, and the most in want of assistance, would find their shares in the legacy more or less reduced by a charge which, as the testator must have expected it to be defrayed in some form, it may be presumed that he did not expect or intend it to be defrayed or charged in such form as would necessarily and at the very moment of distribution, and of need, defeat the prescribed equality, and by reducing the shares of those who would be most in need, place them, in comparison with their fellows, under increased disadvantages. Under these considerations, we are of opinion that the intermediate hires accruing before the departure for embarkation, should be a common fund to be appropriated to the general object of preparation and removal. And wc are inclined to the opinion that so far as the legacies are to be charged with any portion of the expense of removal, the charge incurred up to the time of embarkation, and including the ordinary passage money, should be deducted from the aggregate fund to be divided; and that by this or some other mode of proceeding, there should be the substance as well as the form of equality in the distribu *372 tion. There may indeed be some question whether, if the hires be insufficient to defray the entire ex - pense of removal, the deficiency’ should not be supplied from the estate of the testator undisposed of by the will, if there be any such, rather than from the specific legacies to the individuals who are to be removed. But there being no complaint or suggestion on this subject, and as there may be no decisive reason against the latter alternative, which was adopted in the decree of the circuit court, we concur in that mode of making up the deficiency should there be any, bu-t with the qualification that the ordinary expenses of preparation and transportation, as ascertained at the time of embarkation for Liberia, shall constitute an aggregate charge upon the fund to be distributed, and that the equal share of each in the residue shall be subject to any' special or extraordinary charges incurred by or on behalf of the several individuals, or any of them.
4. It would seem to be proper that .the executor should ascertain at what time the Colonization Society' will be ready to receive the negroes for immediate removal, and should also ascertain and furnish the means of procuring the articles necessary' for the removal and the voyage; and the proper use of such articles should be actually secured to the emigrants by delivery to the proper persons at the proper places —for all which the executor, or some other person to be appointed by the court, should provide. So far as the Colonization Society shall take charge of any of the negroes for the purpose of removing them to Liberia, the proper agent or agents of the society will be thereupon entitled to receive from the executor the sum necessary for defraying the cost and expense to be incurred in performing its undertaking. And the society, or its agent, undertaking to transport and colonize the negroes, may properly’ be selected by the court as the agent or commissioner to be entrusted, under proper security by bond or otherwise, with the duty of receiving on this side of the *373 Atlantic, and after making proper deductions for necessary disbursements, paying over the legacies to parties entitled, on their arrival at. their destination in Africa. The proper application of ail money passing from the executor into other hands, for any of the purposes above mentioned, should of course foe secured in the usual manner. And we -do not know that there is anything inappropriate in the details of the decree on this part of the subject, except as the mode of making up the account of each of the negroes, for the purpose of ascertaining the balance due to each, may vary from the mode indicated in this opinion. But the decree is not specific -in directing when and where the payment of the balance is to be made. We think the payments should be made at any rate after embarkation, and we should think it more provident to make them even to the adults after arrival in Liberia, and that the shares of the infants should be paid there to such person or persons as, by the laws of the place, are entitled to receive and would be responsible for them. As it is of' the utmost importance to the intended colonists that the funds intended for their use in their new homes, should be scrupulously guarded and secured for their use, we think it would have been provident to require the executor, or a commissioner, to ascertain what arraagraents or provisions, made either by the Colonization Society or by the laws of Liberia, mayr be made available for this security in the present case. The requisitions of the decree are apparently proper, and may correspond with the arrangements or provisions referred to ; and there being no particular complaint in this respect, the presumption •is that it does, and at any rate there is enough of the case retained to authorize any modification of these details which further information, to be required either from the executor, or from the agent of the Colonization Society, who is in effect made the agent of the court, may show to be necessary or useful.
*374 Upon the whole, there being an almost entire conformity between the principles of this opinion and the decree appealed from, and the difference not being such as to establish in the appellants any right contested between the parties, and the case being designed for the benefit of the executor and the estate, by the speedy settlement of questions growing out of the will, the executor must pay, out of assets, the costs in this court; and without a formal affirmance or reversal, the cause, with this opinion, is remanded to the circuit court, which may take any proceedings which may be necessary to secure the rights of the appellants, as declared by this opinion.